**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **ANGEL A. VARGAS, Jr.; USA BARBER SCHOOL, INC.;** | **COMPLAINT** |
| **Plaintiff,** | **Civil Action Number:** |
| **v.** | 5:26-cv-718 (ECC/CBF) |
| **ROBERT BURNETT; JAMES ACKERMAN; BRIAN ROSE; JOHN MONAGHAN; CITY OF ONEIDA;** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

---

Plaintiffs **ANGEL A. VARGAS, Jr. and USA BARBER SCHOOL, INC.** by and through their

attorney Zachary C. Oren, Esq. for their Complaint against Defendants respectfully alleges as

follows:

## JURISDICTION

1. This action is brought in part pursuant to §§ 1983 and 1988 of Title 42 of the United

   States Code and the First, Fourth, Fifth and Fourteenth Amendments to the United States

   Constitution.  This action is for money damages to redress the deprivation by the

   Defendants of rights secured to the Plaintiffs by the Constitution and laws of the United

   States and State of New York.  Jurisdiction of this Court is invoked under provisions of

   28 U.S.C. §§ 1331, 1343(3), and 1367 (A) and the aforementioned statutory and

   constitutional provisions.

1

**PARTIES AND RELEVANT NON-PARTIES**

2.  Plaintiff, **ANGEL A. VARGAS, Jr.**, during all relevant times herein was and is an adult and a citizen of the United States of America and residing in the State of New York. Plaintiff resided within the jurisdiction of the United States District Court for the Northern District of New York.

3.  Plaintiff, **USA BARBER SCHOOL, INC.** [hereafter referred to as "USA Barber School"], during all relevant times herein was and is a domestic corporation formed by and through the laws of the State of New York with its principal place of business located at 121 East Railroad Street, Oneida, New York 13421. **USA BARBER SCHOOL, INC.** was formed on or about February 27, 2019.

4.  Upon information and belief Defendant **CITY OF ONEIDA, NEW YORK**, during all relevant times herein was and is a municipal corporation organized and existing through and by virtue of the laws of the State of New York and who maintains offices at 109 North Main Street, Oneida, New York 13421 and said municipal corporation is located in the Northern District of New York and employed the above captioned individual Defendants at all relevant times herein.

5.  Upon information and belief, the Defendant City of Oneida operates a Codes Department [hereafter "Oneida City Codes Enforcement Department"] whose principal place of business is also 109 North Main Street Oneida, New York 13421.

6.  Upon information and belief Defendant **JAMES ACKERMAN**, during all relevant times herein was a duly appointed Codes Enforcement Officer for the Oneida City Codes Enforcement Department and was charged with carrying out his lawful duties and responsibilities in accordance with the law. Defendant **JAMES ACKERMAN**, is sued

2

in his individual and official capacity.  Upon information and belief **JAMES ACKERMAN's**, professional address is at City Hall, 109 North Main Street Oneida, New York 13421. All actions taken by Defendant Ackerman were within the scope of his employment with the City of Oneida and under color of law.

7. Upon information and belief Defendant **BRIAN ROSE**, during all relevant times herein was a duly appointed Codes Enforcement Officer for the Oneida City Codes Enforcement Department and was charged with carrying out his lawful duties and responsibilities in accordance with the law.  Defendant **BRIAN ROSE**, is sued in his individual and official capacity.  Upon information and belief **BRIAN ROSE's**, professional address is at City Hall, 109 North Main Street Oneida, New York 13421. All actions taken by Defendant Rose were within the scope of his employment with the City of Oneida and under color of law.

8. Upon information and belief Defendant **ROBERT BURNETT**, during all relevant times herein was a duly appointed Director of Codes Enforcement for the Oneida City Codes Enforcement Department and was charged with carrying out his lawful duties and responsibilities in accordance with the law.  Defendant **ROBERT BURNETT**, is sued in his individual and official capacity.  Upon information and belief **ROBERT BURNETT's**, professional address is at City Hall, 109 North Main Street Oneida, New York 13421.  Also, for a short period of time for approximately a week or two, as plead below, **ROBERT BURNETT** was *acting* City Manager for the City of Oneida.  All actions taken by Defendant Burnett were withing the scope of his employment with the City of Oneida and under color of law.

9. During all relevant times mentioned herein, Defendants Ackerman, Rose and Burnett were acting as peace officers and/or codes enforcement officers under color of law, via the constitutions, statutes, charters, ordinances, rules, regulations, customs and usages of the United States of America, State of New York, and City of Oneida.

10. Upon information and belief Defendant **JOHN MONAGHAN**, during all relevant times mentioned below was the *acting* City Manager for the City of Oneida and was charged with carrying out his lawful duties and responsibilities in accordance with the law. Defendant **JOHN MONAGHAN**, is sued in his individual and official capacity. Upon information and belief **JOHN MONAGHAN's**, professional address was at City Hall, 109 North Main Street Oneida, New York 13421. All actions taken by Defendant Monaghan were withing the scope of his employment with the City of Oneida and under color of law.

11. During all relevant times mentioned herein, Defendant Burnett was the supervisor for Defendants Ackerman and Rose.

12. When Defendant Monaghan was *acting* City Manager, he was the supervisor for Defendants Burnett, Ackerman and Rose

13. During all relevant times mentioned herein, RICK ROSSI is the son of Plaintiff Vargas and is the duly elected Mayor of the Defendant City of Oneida. Mayor Rick Rossi owns 49% of the shares of Plaintiff USA Barber School. Plaintiff Vargas owns 51% of the shares of Plaintiff USA Barber School.

## STATEMENT OF FACTS

14. On or about October 18, 2018 Plaintiff Vargas received unanimous site plan approval with conditions and a conditional use permit from the City of Oneida, Planning

4

Commission Zoning Board of Appeals[1] to establish a barber shop and barber school at 115 E. Railroad Street.  A true copy of the applicable pages of the minutes from said meeting is attached hereto as **Exhibit A**.

15. At said meeting, Plaintiff Vargas noted that he would be engaging in constitutionally protected artistic free speech by painting a mural on the east corner of the building of an old-fashioned barber pole which is reflected in the minutes.  (Exhibit A page 2).

16. Therefore, two of the conditions imposed on the site plan approval were that Plaintiff obtain all building and sign permits.  (Exhibit A page 3).

17. Accordingly, Plaintiff duly pulled a sign permit for said constitutionally protected speech which issued on January 3, 2019, a true copy of which is attached hereto as **Exhibit B**.

18. Likewise, Plaintiff hired a contractor who on or about January 28, 2019 pulled a building permit, a true copy of which is attached hereto as **Exhibit C**.

19. Importantly, the scope of work in said permit was described as "changing bulbs to LED and convert[ing] Party Pizza Palace to Oneida Barber Shop" with the electrical and plumbing questions being answering in the affirmative.  (Exhibit C page 1).

20. On or about January 30, 2019 the City did issue a building permit, permitting "change of use from Pizza Party Palace to Barber Shop-Barber School," a true copy of which is attached hereto as **Exhibit D**.

21. Work then began on the Barber Shop and School at 121 East Railroad Street, Oneida, New York 13421 [hereafter referred to as the "subject premise"].

---

[1] It appears from the documents available to counsel that the City of Oneida planning board and zoning board of appeals are one in the same which is indeed common for smaller municipalities.

22. Specifically, the constitutionally protected mural was painted, a true picture of which is attached hereto as **Exhibit E**.

23. As Exhibit E demonstrates the mural was clearly of artistic expression entitling it to the highest degree of protection afforded under the First Amendment to the United States Constitution.

24. On February 4, 2019 the City issued a Sign Certificate of Compliance, a true copy of which is attached hereto as **Exhibit F**.

25. The City at the time was apparently pleased with the mural as it used a picture of it in support of a grant application to New York State under its Downtown Revitalization Initiative [hereafter referred to as the "DIR grant application"], a true copy of the page from said grant application is attached hereto as **Exhibit G**.

26. Importantly in said DIR grant application, the City recognized the mural as art, stating that "local artists and schools will be essential parts of the program implementation. (Exhibit G).

27. Equally important in said DIR grant application, under the "Regulatory" category the City put "none" - apparently realizing that artistic expression is very rarely regulated under the First Amendment because of the high degree of Constitutional protection it receives under the First Amendment.

28. The Covid-19 pandemic delayed construction on the project, consequently Plaintiff had to get extensions/renewals of the original Exhibit D building permit.

29. Nevertheless, the work was duly completed and on March 30, 2023 Defendant Ackerman issued a Certificate of Occupancy for the subject premise, a true copy of which is attached hereto as **Exhibit H**.

6

30. Likewise, on or about April 18, 2023 the City Fire Marshal inspected the subject premise approved the same for occupancy, a true copy of the Certificate of Compliance from the City Fire Marshal is attached hereto as **Exhibit I**.

31. In November of 2023 Rick Rossi, Plaintiff Vargas' son and co-minority-owner of Plaintiff USA Barber School, ran for and successfully won the race for the City of Oneida Mayor.

32. Mayor Rossi assumed office in January of 2024.

33. Upon assuming office, Mayor Rossi appointed Dr. Doug Selby as City Manager who met the qualifications under the City Charter to hold such a position.

34. Upon information and belief, in April of 2024 the City of Oneida Common Council,[2] its legislative body, was set to terminate Dr. Selby as City Manager.

35. Upon information and belief, Dr. Selby resigned before the Common Council could terminate him.

36. Defendant Burnett did not have the minimum qualifications under the City Charter to hold the City Manager position but was appointed to *acting* City Manager.

37. Accordingly, the Common Council, by majority vote attempted to amend the Charter to water-down the qualifications for the City Manager position so Defendant Burnett would qualify for said position.

38. Mayor Rossi vetoed the Common Council's amendments to the Charter.

39. The Common Council failed to override Mayor Rossi's veto.

40. As such, it was Mayor Rossi's veto that prevented the watering down of the qualifications and said Defendant Burnett was appointed to *acting* City Manager where

---

[2] To be clear there were four votes on the City of Oneida Common Council which were in favor of terminating Dr. Selby. This was a majority vote, but not veto proof i.e. four votes on the Council could not override a Mayoral veto.

he resigned a week later. Defendant John Monaghan was then appointed *acting* City Manager by the Council.  Defendant Monaghan stayed in this position for approximately 4 to 6 weeks after which he resigned and took employment elsewhere.

41. In July of 2024 the Plaintiffs' opened the Barber School to its first class of students, composed of four students.

42. Defendants then began their campaign of retaliation.

43. On August 19, 2024 Plaintiffs received the attached "Order to Remedy" claiming that the First Amendment protected mural at the subject premise violated the Oneida City Code based on a photograph dated August 8, 2024.  A true copy of the Order to Remedy from the Defendants is attached hereto as **Exhibit J**.

44. Continuing their campaign of harassment, on August 27, 2024, when Mayor Rossi was running the barber school, Defendants then showed up unannounced at the subject premise demanding to inspect the same, scaring students who were attending the Barber School.

45. On August 28, 2024 Defendants continued their harassment and showed up at the subject premise again and demanded to inspect the same again.

46. Plaintiff Vargas graciously allowed Defendants to inspect the premise again, but after twenty minutes of Defendants' continued harassment with students beginning to arrive, he asked them to leave the subject premise which they did as they had more than an adequate amount of time to conduct their alleged "investigation."

47. Also on August 28, 2024 Defendants issued and served Plaintiff Vargas with a "Stop Work Order/Order to Remedy," a true copy of which is attached hereto as **Exhibit K**.

8

48. Even more problematic, the Stop Work Order does not describe the allegedly illegal work occurring on the premise (because there was none) nor does it cite which provisions of the Code the allegedly illegal work violated.  (**Exhibit K**).

49. Upon information and belief, the next day on August 29, 2024 Defendants filed internal civil administrative workplace violence harassment complaints against Mayor Rossi.

50. As will be evident in the following paragraphs and from the Court's transcript Defendants criminal procedural skills were either quite lacking or completely retaliatory, or most likely some combination thereof, as they served various criminal accusatory instruments some supported, and others not, on different days.

51. On or about September 4, 2024 Defendants had the Madison County Sherrif Deputy serve Plaintiff Vargas with an appearance ticket, with no support complaining about the constitutionally protected artistic mural, a true copy of which is attached hereto as **Exhibit S**.  Said appearance ticket commanded Plaintiff's appearance in Oneida City Court on September 10, 2025.

52. In Defendants' continued campaign of harassment, on or about September 6, 2024 Defendants lodged the Information and Complaint, attached hereto as **Exhibit L** against Plaintiff Vargas in Oneida City Court, complaining about the constitutionally protected artistic mural that the Defendant City had already sanctioned in Exhibits B; F and G.

53. In Defendants' continued campaign of harassment, on or about September 17, 2024, Defendants issued and served[3] an appearance ticket for "no building permit," a true copy of which is attached hereto as **Exhibit M**, despite the fact that the subject building

---

[3] In the interest of full disclosure it appears the Defendants had Madison County Deputy Sheriff Stephen Markle serve the appearance ticket on Plaintiff Vargas on September 17, 2024.

already had a valid Certificate of Occupancy and Certificate of Compliance, previously attached as Exhibits H and I respectively.

54. Said appearance ticket required Plaintiff Vargas to appear in Oneida City Court on November 12, 2024 at 9:00 am. (Exhibit M).

55. However, just like the prior September 4, 2024 appearance ticket there was no support behind the September 17, 2024 appearance ticket.

56. Then, Defendants continuing their campaign of harassment, on or about October 24, 2024 lodged the attached Information and Complaint claiming that Plaintiff had failed to stop construction work per the August 28, 2024 stop work order, a true copy of which is attached hereto as **Exhibit N**.

57. Then, on or about December 9, 2024, completely inverting the constitutional criminal process, *after they had filed the aforestated accusatory instruments against Plaintiff*, Defendants submitted a completely fabricated search warrant application to the Oneida City Court, a true copy of which is attached hereto as **Exhibit O**.

58. The search warrant application was fabricated because, as explained in the handwritten notations, all of the alleged illegal construction/building design either did not exist, was there from the previous uses of the subject premise (i.e. pizza parlor/mini golf course), and/or had been approved by the current Certificate of Occupancy and Certificate of Compliance for the subject premise.  (Exhibits H and I).

59. Furthermore, strikingly absent from the allegedly incriminating photos attached to the search warrant application was any evidence whatsoever of construction, as there are no construction workers, building materials, construction tools nor any construction debris depicted in any of the photos.

60. Equally, problematic the pictures attached to the search warrant do not depict a building under construction but instead a beautifully constructed Barber Shop and School as permitted by the Certificate of Occupancy and Certificate of Compliance.  (Exhibits H and I).  Indeed, one would think a municipality would appreciate such a respectfully small businesses opening in their jurisdiction.

61. As further evidence of fabrication and/or deception by withholding evidence[4] Defendants certified that the "true and accurate copies of the floor layouts are attached as Exhibit C" and then attached the outdated and undated plans of when the subject building was the Party Pizza Palace as Exhibit C to the search warrant application and failed to inform the Court that the originating building permit that was approved by the Defendants stated "…*convert Party Pizza Palace to Oneida Barber Shop*."  (Compare Complaint Exhibit C page 1, to Complaint Exhibit O – Ackerman Affidavit para. 6 attaching Exhibit C).

62. Finally, as for Wayne Winchell, Defendants "credible source", Mr. Winchell's "statement" although bearing a notary stamp was not sworn to under oath rendering it inadmissible hearsay and it is a far cry from being in the form of a supporting deposition which would have been the proper instrument under the New York State Criminal Procedure Law.  Likewise, it failed to mention how Wayne Winchell is very connected to the City Codes Department as he always seems to know when to appear to record the Codes Department's field activities.  Furthermore, it fails to mention that Plaintiffs turned down Mr. Winchell as a contractor to do work on the subject premise.

---

[4] It should be noted that Plaintiffs as part of their building permit process sent building plans to the City, however those plans are nowhere found in the search warrant application submitted by Defendants.  A true and correct copy of the said building plans is attached hereto as **Exhibit T**.

63. Accordingly, upon information and belief the Oneida City Court correctly denied the search warrant application.

64. Then on December 18, 2024, the then City Manager signed the attached letter which determined that the internal civil administrative workplace violence environment/harassment complaints Defendants had lodged against Mayor Rossi were duly investigated by an outside independent investigator and it was determined that no violation of any City policy occurred.  A true copy of said letter is attached hereto as **Exhibit P**.

65. On January 17, 2025 the Oneida City Court had to wade through and dismiss all of the aforestated criminal accusatory instruments the Defendants had filed against Plaintiff Vargas concerning the subject property.  A true copy of the Oneida City Court transcript is attached hereto as **Exhibit Q**.

66. Accordingly, the Certificates of Dismissal for the aforestated criminal accusatory instruments are attached hereto as **Exhibit R**.

67. Throughout this criminal process Defendants talked to and publicized this baseless and unconstitutional criminal prosecution in the media.

68. Ultimately, the damage by Defendants was done and the Barber School had to cease operations in April or May of 2025.

69. Plaintiff served the Defendants with a Notice of Claim pursuant New York State General Municipal Law § 50-e per the following schedule:

    a.  Defendant Rose on April 1, 2025;

    b.  Defendant City on April 1, 2025;

    c.  Defendant Ackerman on April 1, 2025;

d.  Defendant Burnett on April 1, 2025.

70. The Defendant City demanded a 50-h Examination pursuant to General Municipal Law.

71. On August 14, 2025 Plaintiff appeared at and testified in said 50-h Examination.

72. More than 30 days have elapsed since the conclusion of the 50-h Examination and the City Defendants have failed to accept, adjust or deny the claim.

73. Therefore, Plaintiff has complied with the state law condition precedent for suit against the City Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
## A FEDERAL CLAIM OF MALICIOUS PROSECUTION IN VIOLATION OF THE FIRST, FOURTH, FIFTH AND FOURTEENTH AMENDMENT BROUGHT UNDER § 1983 AGAINST DEFENDANTS ACKERMAN, ROSE, MONAGHAN AND BURNETT

74. Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

75. As factually plead above, all the individual Defendants participated in the criminal prosecution of Plaintiffs.

76. As factually plead above, all named Defendants directly participated in the initiation and continuation of the criminal proceedings against Plaintiffs.

77. Upon information and belief Plaintiff was released on his own recognize under N.Y. Crim. Proc. Law § 510.40 which requires that he "render himself at all times amenable to the orders and processes of the court."

78. Plaintiffs had to appear in the Oneida City Court approximately two to four times on said charges.

13

79. Additionally, as part of the criminal prosecution Defendants caused to be served on Plaintiffs the Exhibit J - Order to Remedy and Exhibit K – Stop Work Order which constituted seizures and/or takings of Plaintiffs aforestated business.

80. Accordingly, the above-mentioned acts were an unconstitutional seizure/taking depriving Plaintiffs of the use and enjoyment of their persons, papers, and effects in violation of the Fourth Amendment as well as violations of the First, Fifth and Fourteenth Amendments.

81. The above-mentioned acts deprived Plaintiffs of their Constitutionally protected liberty interests.

82. As factually plead above, the Plaintiffs suffered a life (in the form of speech), liberty and property restraint on their constitutional rights due to the intentional acts and/or omissions by Defendants.

83. As a result of the aforementioned criminal prosecution of Plaintiffs and their property was seized within the meaning of the Fourth Amendment, their property took under the meaning of the Fifth/Fourteenth Amendments and restraint imposed on their protected speech under the First Amendment.

84. The above-mentioned acts caused the Plaintiffs to suffer a harm of Constitutional proportions.

85. At all relevant times herein, Defendants' maliciously prosecuted Plaintiff in bad faith by maliciously, willfully, intentionally, and lying under oath in their criminal accusatory instruments, search warrant applications/affidavits and/or other documents to create probable cause.

14

86. Furthermore, said criminal prosecution was not grounding in probable cause, but as alleged above motivated by a political campaign of retribution because Mayor Rossi vetoed the legislation that effectively blocked Defendant Burnett from becoming the permanent City Manager.

87. The said charges and subsequent prosecution were not supported by probable cause.

88. The said charges and subsequent prosecution were not supported by arguable probable cause.

89. Upon information and belief, the case was never submitted to the Madison County Grand Jury.

90. The aforementioned disposition of the criminal case ended without a conviction of Plaintiffs.

91. The aforementioned criminal prosecution, seizure/taking/restraint and damages Plaintiffs sustained as a result thereof, was proximately caused by the intentional acts of the Defendants.

92. At all relevant times, based on the facts as pled above, all individually named Defendants intentionally maliciously prosecuted Plaintiffs in violation of their clearly established First, Fourth, Fifth and Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

**AS AND FOR A SECOND CAUSE OF ACTION**
**A FEDERAL CLAIM OF FABRICATION OF EVIDENCE IN VIOLATION OF THE**
**FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENT BROUGHT UNDER §**
**1983 AGAINST DEFENDANTS ACKERMAN, ROSE, MONAGHAN AND BURNETT**

93. Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

15

94. As factually pled above in the foregoing paragraphs, at all relevant times herein, Defendants were investigating officials – i.e. sworn Codes Enforcement Peace Officers for the City of Oneida.

95. As factually plead and detailed in the foregoing paragraphs, Defendants fabricated evidence in the form of criminal accusatory instruments and search warrant applications/affidavits to support a criminal prosecution against Plaintiffs.

96. As factually plead and detailed in the foregoing paragraphs, the nature of this fabricated evidence would influence a jury's decision in a criminal trial because of the impeachment against Defendants and/or probative (or lack thereof) value to the criminal charges, and without such fabricated evidence concerning Plaintiffs there would be no case for the People to submit to the jury.

97. As factually plead and detailed in the foregoing paragraphs, Defendants forwarded this fabricated information to prosecutors from the Madison County District Attorney's office.[5]

98. As factually plead and detailed in the foregoing paragraphs, Plaintiffs suffered numerous deprivations of liberty and property as a result of this fabricated evidence.

99. Defendants' actions and/or inactions caused the Plaintiffs to suffer the harms complained of herein.

100.    At all relevant times, based on the facts as pled above, the individual Defendants intentionally under color of law fabricated evidence against Plaintiffs in violation of his

---

[5] The transcript shows it was ADA Elizabeth S. Healy who prosecuted the charges, who now appears to be with the Chenango County District Attorney's Office.  (Exhibit Q page 1).

16

clearly established Fourth, Fifth, Sixth, and Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

## AS AND FOR A THIRD CAUSE OF ACTION
## A FEDERAL CLAIM OF ABUSE OF PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT BROUGHT UNDER § 1983 AGAINST DEFENDANTS ACKERMAN, ROSE, MONAGHAN AND BURNETT

101.    Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

102.    Based on the foregoing, the individual Defendants initiated legal processes against the Plaintiffs, rendering Plaintiff Vargas to be RORed, his and the Mayor's business's property encumbered/taken and requiring Plaintiff Vargas's appearance in Court.

103.    Based on the foregoing, said Defendants did institute said process to do harm to Plaintiffs, without excuse or justification, as there was no basis whatsoever for the Order to Remedy, the Stop Work Order and the criminal accusatory instruments.

104.    Based on the foregoing, the individual Defendants did initiate said process under color of law with a collateral objective that is outside the legitimate ends of the process, in that there was no basis for the Order to Remedy, the Stop Work Order and the criminal accusatory instruments but rather it was instead political retribution because as stated above Mayor Rossi rightfully effectively blocked Defendant Burnett's promotion to becoming the permanent City Manager.

105.    Said abuse of process caused the harms Plaintiffs suffered as detailed in their prayer for relief section of this Complaint.

17

106. At all relevant times, based on the facts as plead above, the individual Defendants violated Plaintiffs' clearly established Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**A FEDERAL CLAIM OF FIRST AMENDMENT RETALIATION BROUGHT UNDER § 1983 AGAINST DEFENDANTS ACKERMAN, ROSE, MONAGHAN AND BURNETT**

107. Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

108. As factually plead above, Plaintiffs had a mural of artistic expression painted on the side of the subject building which is constitutionally protected speech.

109. As described above Plaintiff was then ordered to stop engaging in the speech by removing the mural and then criminally prosecuted for not removing the mural which proximately caused the harms about which Plaintiff complains.

110. At all relevant times, based on the facts as pled above, all individual Defendants intentionally under color of law retaliated against the Plaintiffs for exercising their clearly established First Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**A FEDERAL DERIVATIVE *MONELL*[6] CLAIM OF MALICIOUS PROSECUTION BASED ON THE ACTS OF OFFICAL POLICYMAKERS BROUGHT UNDER § 1983 AGAINST THE DEFENDANT CITY**

111. Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

---

[6] Monell v. Department of Social Services, 436 US 658 (1978).

112.    Defendant City acts and makes decisions of policy by and through its policymakers.

113.    One such policymaker for the Defendant City was Defendant Burnett who as Director of Codes rendered him with final policy making authority for the Codes Enforcement Department for the Defendant City under a <u>Monell</u> theory of liability.

114.    Additionally, any actions Defendant Burnett performed when he was the *acting* City Manger would also have the force and effect of making policy for the Defendant City.

115.    Accordingly, Defendant Burnett's actions had the force and effect of policy sufficient to bind the Defendant City.

116.    Another such policymaker for the Defendant City was Defendant Monaghan who was the *acting* City Manager rendering him with final policy making authority for the Defendant City under a <u>Monell</u> theory of liability.

117.    Indeed, on or about August 21, 2024, Defendant Monaghan admitted to Plaintiff Vargas that he authorized the prosecution against Plaintiffs based on the constitutionally protected mural while he was *acting* City Manager.

118.    Therefore at all relevant times, based on the policy making acts of Defendant Burnett as pled above, the Defendant City intentionally maliciously prosecuted Plaintiffs in violation of their First, Fourth, Fifth and Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**A FEDERAL DERIVATIVE *MONELL* CLAIM OF FABRICATION OF EVIDENCE**
**BASED ON THE ACTS OF OFFICAL POLICYMAKERS BROUGHT UNDER § 1983**
**AGAINST THE DEFENDANT CITY**

119.    Plaintiffs repeat, restate and re-allege with the same force and effect the

allegations of each of the foregoing paragraphs as if fully incorporated.

120.    As factually plead above, Defendants Burnett and Monaghan were official policy

makers for the Defendant City and therefore Defendant Burnett's and Monaghan's

actions could establish *Monell* policy maker liability against the Defendant City.

121.    Therefore at all relevant times, based on the policy making acts of Defendants

Burnett and Monaghan as pled above, the Defendant City intentionally under color of

law fabricated evidence against Plaintiffs in violation of their Fourth, Fifth, Sixth, and

Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to

remedy this Constitutional violation.


**AS AND FOR A SEVENTH CAUSE OF ACTION**
**A FEDERAL DERIVATIVE *MONELL* CLAIM OF ABUSE OF PROCESS BASED ON**
**THE ACTS OF OFFICAL POLICYMAKERS BROUGHT UNDER § 1983 AGAINST**
**THE DEFENDANT CITY**

122.    Plaintiffs repeat, restate and re-allege with the same force and effect the

allegations of each of the foregoing paragraphs as if fully incorporated.

123.    As factually plead above, Defendants Burnett and Monaghan were official policy

makers for the Defendant City and therefore Defendant Burnett's and Monaghan's

actions could establish *Monell* policy maker liability against the Defendant City.

124.    Therefore at all relevant times, based on the policy making acts of Defendants

Burnett and Monaghan as pled above, the Defendant City intentionally under color of

law engaged in abusive process against Plaintiffs in violation of their Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**A FEDERAL DERIVATIVE *MONELL* CLAIM OF FIRST AMENDMENT RETALIATION BASED ON THE ACTS OF OFFICAL POLICYMAKERS BROUGHT UNDER § 1983 AGAINST THE DEFENDANT CITY**

125.    Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

126.    As factually plead above, Defendants Burnett and Monaghan were official policy makers for the Defendant City and therefore Defendant Burnett's and Monaghan's actions could establish *Monell* policy maker liability against the Defendant City.

127.    Therefore at all relevant times, based on the policy making acts of Defendants Burnett and Monaghan as pled above, the Defendant City intentionally under color of law engaged in abusive process against Plaintiffs in violation of their Fourteenth Amendment rights and Plaintiffs bring this claim under 42 USC § 1983 to remedy this Constitutional violation.

**AS AND FOR A NINTH CAUSE OF ACTION**
**A STATE COMMON LAW CLAIM OF MALICIOUS PROSECUTION BROUGHT AGAINST ALL DEFENDANTS**

128.    Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

129.    As factually plead above, all the individual Defendants participated in the scope of their employment with the criminal prosecutions of Plaintiffs.

130.    Therefore, the Defendant City is bound by their acts via the doctrine of respondeat superior.

21

131.    As factually plead above, the criminal prosecutions were lacking probable cause.

132.    As factually plead above, the criminal prosecutions resulted in a termination in favor of the Plaintiffs.

133.    As factually plead above, the criminal prosecutions were based in malice, namely political retribution.

134.    Therefore, at all relevant times, based on the facts as pled above, all the Defendants intentionally maliciously prosecuted Plaintiffs and Plaintiffs bring this common law claim to remedy the harms caused by such.

### AS AND FOR A TENTH CAUSE OF ACTION
### A STATE COMMON LAW CLAIM OF ABUSE OF PROCESS BROUGHT AGAINST ALL DEFENDANTS

135.    Plaintiffs repeat, restate and re-allege with the same force and effect the allegations of each of the foregoing paragraphs as if fully incorporated.

136.    As factually plead above, all the individual Defendants issued process against the Plaintiffs within the scope of their employment.

137.    Therefore, the Defendant City is bound by their acts via the doctrine of respondeat superior.

138.    As factually plead above, the process issued was utterly lacking with justification and there was no excuse for it.

139.    As factually plead above, the process was used in an attempt to obtain a collateral objective i.e. as political retribution.

22

140.    Therefore, at all relevant times, based on the facts as pled above, all the Defendants intentionally abused process and Plaintiffs bring this common law claim to remedy the harms caused by such.

**WHEREFORE**, Plaintiffs demands judgment against all the Defendants, each of them, jointly and severally, for as follows:

A.  Monetary compensatory damages including but not limited to loss of his good name, economic losses, loss of employment, lost wages, lost benefits of employment/future business earnings, emotional harm, mental anguish, loss of freedom, loss of liberty, loss of pursuit of happiness, loss of the use and enjoyment of his property, loss of reputation, loss of enjoyment of hobbies, and loss of constitutional rights;

B.  Punitive damages to be determined by a jury;

C.  Attorneys fees as part of costs and the costs of this action pursuant to 42 USC § 1988;

D.  Injunctive relief in the form of a Court Ordered name clearing hearing;

E.  Such other and further relief as this Court determines to be just, fair, appropriate, and proper.

## JURY DEMAND

Plaintiff demands a jury trial of all claims stated herein.

Respectfully submitted,


Dated: April 13, 2026

*/s/ Zachary C. Oren*
**Ward Arcuri Law Firm**
By: Zachary C. Oren, Esq.
*Attorneys for Plaintiffs*
185 Genesee Street, Suite 1201
Utica, NY 13501
Telephone: (315) 797-7300
Email: zach@wardarcuri.com